PAUL RICHMOND (WSBA #32306)
4616 25th Avenue NE, #449
Seattle, WA, 98105
(206) 526-0565

~~~ FILED ~~~~ ENTERED
~~~ LODGED ~~~ RECEIVED

**SEP 0 6 2005** **MR**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

ATTORNEY FOR PLAINTIFFS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

# CV05 · 1529

JOHN CRANN, LAUREL BLACK

    Plaintiffs,

v.

OFFICER L. CARVER, individually
and in his capacity as a OFFICER of
the SEATTLE POLICE DEPARTMENT,
and JANE DOE CARVER, and the marital
community thereof; OFFICER J.
MACCARRONE, individually and in his
Official capacity as a OFFICER of the
SEATTLE POLICE DEPARTMENT,
and JANE DOE MACCARRONE, and the
Marital community thereof;
SERGEANT BENSON, individually and
In his capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT, and
JANE DOE BENSON and the
Marital community thereof
CITY OF SEATTLE, The OFFICE OF
PROFESSIONAL ACCOUNTABILITY;
JOHN PRICE,

) NO.
) COMPLAINT FOR VIOLATIONS OF
) CIVIL RIGHTS,
) FALSE ARREST, FALSE
) IMPRISONMENT, BATTERY,
) ASSAULT,
) INTENTIONAL INFLICTION OF
) EMOTIONAL DISTRESS,
) NEGLIGENCE
)
) **JURY TRIAL DEMANDED**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

05-CV-01529-CMP

COMPLAINT
CRANN V. CARVER, ET AL

1

and Jane Doe Price and the marital        )
community thereof; DOES 1-25,              )
                                           )
        Defendants.                        )
                                           )
_____       )

JOHN CRANN, LAUREL BLACK the Plaintiffs herein, by and through their

attorney, allege as follows:

## I. JURISDICTION

1. This court has jurisdiction over the subject matter of this action

pursuant to Title 28, United States Code Sections 1331, 1332, 1343, and 1367,

and venue is properly set in the Western District Federal Court pursuant to 28

U.S.C. 1391.

1.2 The claims upon which this suit is based occurred in this judicial

district.

1.3 The acts and omissions herein occurred in King County Washington.

Plaintiff is informed and believes, and on that basis alleges, that each of the

named Defendants reside in this judicial district.

1.4. The matter in controversy exceeds the sum of $75,000 exclusive of

interests and costs.

## II. PARTIES

2.1        Plaintiff JOHN CRANN is a man residing primarily in the

State of Washington, in King County within the Western District of Washington.

He is engaged to Laurel Black. Plainitff Crann was the victim of an unjustified

stop excessive force, and false arrest and imprisonment. On October 5, 2003 he

and his fiancee had returned from a six week camping trip in the Southwestern

COMPLAINT                                                              2
CRANN V. CARVER, ET AL

United States. That evening, before he'd had a chance to unpack he noticed an odd threatening man lurking outside his house, near the truck. When he stepped outside to investigate, the odd man who turned out to be Defendant Price, screamed to some nearby police. Plaintiff Crann was confronted by Defendant Officers who drew their guns, and had no interest in learning the facts. While attempting to talk to Defendant Officers, Plaintiff Crann was tackled by Defendant Officers, his face gratuitously smashed into the pavement by Defendant Officers, and his arms bent by Defendant Officers. Already under their control, the Defendant Officers pointed guns at his head. He was then charged with "obstruction" and forced to borrow thousands of dollars to defend himself from these charges. He has suffered physical injury, lasting trauma, has required ongoing counseling since the treatment and has lost wages as a result of this event.

      2.2      Plaintiff LAUREL BLACK is the fiancee and domestic partner of John Crann, residing primarily in the state of Washington, in King County within the Western District of Washington. She was threatened by at least one Defendant officer involved in the incident when she complained about the treatment of Plainitff John Crann.

      2.3      Defendant OFFICER L. CARVER and JANE DOE CARVER constitute a marital community under the laws of the State of Washington and upon belief reside within King County within the Western District of Washington State. Defendant L. Carter used gratuitous and unnecessary force against Plainitff Crann. Defendant L. Carter later called Plaintiffs' home and threatened Crann with more criminal charges as a result of Plaintiff Black registering a

COMPLAINT                                          3
CRANN V. CARVER, ET AL

complaint about Defendants' behavior.  Upon belief, Defendant L. CARVER was
at the time of the injuries complained of in this complaint, an employee and/or
agent of the SEATTLE POLICE DEPARTMENT, acting within the scope of his
duties.

      2.4      Defendant OFFICER J. MACCARRONE and JANE DOE
MACCARRONE constitute a marital community under the laws of the State of
Washington and upon belief reside within King County within the Western District
of Washington State.  Defendant MACCARRONE used gratuitous and
unnecessary force against Plainitff Crann.  Upon belief, OFFICER
MACCARRONE was at the time of the injuries complained of in this complaint,
an employee and/or agent of the SEATTLE POLICE DEPARTMENT, acting
within the scope of his duties.

      2.5      SERGEANT BENSON and JANE DOE BENSON constitute
a marital community under the laws of the State of Washington and upon belief
reside within King County within the Western District of Washington State.
Defendant BENSON took a complaint about the conduct of officers under his
command, then allowed one of the officers charged with this offense to call and
threaten the people who called to compalin about his behavior.

      2.6      DEFENDANT CITY OF SEATTLE is a government entity in
KING COUNTY governed and functioning under the laws of the State of
Washington.  It employs the named Officers as well as the Officers of the
SEATTLE POLICE DEPARTMENT whose identities are unknown, who
responded to the scene and participated in the abuse of the Plaintiff.

      2.7      DEFENDANT OFFICE OF PROFESSIONAL



ACCOUNTABILITY is a g government entity in KING COUNTY governed and functioning under the laws of the State of Washington.  It is charged with making investigations into citizen accusations of police misconduct.

2.8     JOHN PRICE and JANE DOE PRICE constitute a marital community under the laws of the State of Washington and upon belief reside within King County within the Western District of Washington State.

2.9     DOES 1-100 are, and were at all times mentioned herein, OFFICERS, Involved in this Incident, Supervisors, and the Incident Commander For This Incident , Actors, Or Officials Involved In The Planning, Creation, Development Or Exercise Of Police Force and Control employed against Plaintiff in the incident  which is the subject of this action, and in committing the acts and omissions herein alleged hereinafter alleged, acted under color of state law as agents of the SEATTLE POLICE DEPARTMENT or the KING COUNTY CORRECTIONAL FACILITY, and with the full consent and approval and, or POLICE OFFICERS employed by the CITY OF SEATTLE, who came to the scene, and violated Plaintiff's rights as discussed, or agents of the SEATTLE POLICE DEPARTMENT OFFICE OF PROFESSIONAL ACCOUNTABILITY who refused to investigate aspects of his complaint, including at least one threatening call made to Plaintiffs' home by Defendant CARVER.

2.8     This action is brought pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Article 1, Section 5 and Article 1, Section 7 of the Washington State Constitution, 42 U.S.C. 1983, 1988, Revised Code of Washington Title 9, Chapter 62, Section

10(1), Washington State common law prohibiting assault, battery, intentional infliction of emotional distress, false arrest and false imprisonment, and Washington common law negligence.

2.9　　　On June 20, 2005, the City of Seattle Office of Risk Management was served with a Notice of Claim.  The City rejected the claim, on behalf of respondent and it has been more than sixty days since the claim was filed.

### III. FACTS

3.1　　Plaintiff John Crann (hereinafter "Crann" or "Plaintiff") is a resident of Seattle and King County.   He has no criminal history.

3.2　　From about the age of twenty, Plainitff Crann suffered from a form of social anxiety disorder.  He overcame this with much work.

3.3　　 Plainitff Crann appreciated the gift of his recovery and sought to give back to those less fortunate.  He sought work helping those with similar aflictions.  He became a para educator in special education, working with the handicapped.  By all accounts, he excelled at this.  He has worked for many years in this field.

3.4　　Plaintiff Crann has a long love for the wilderness and is an avid hiker and rock climber. From Mid August to early October of 2003, Plaintiff Crann and his fiancee Plaintiff

Laurel Black had been on a six week trip hiking throughout the Southwestern United States around New Mexico and Utah.

3.5   On October 5th, 2003, Plainitffs John Crann and Laurel Black had returned back at their home in Seattle. Plaintiffs Crann and Black shared this home with their landlord, John Perry. Their home was located on 3910 Whitman Avenue in the Fremont neighborhood, approximately six blocks south of the East-West arterial 45thStreet and approximately one block east of Aurora Avenue. John had lived in this house for nearly three years.

3.6   At approximately 3PM that evening, Plaintiff Crann removed a few things from his truck.

3.7   At approximately 7PM that evening, Plaintiff Crann was inside his home cooking dinner and waiting for his fiancee Plaintiff Black to get home. His truck had not yet been unpacked.

3.8   Plaintiff Crann noticed just outside his home, an odd, menacing looking man he had not seen before carrying a large stick.

3.9   Plainiff Crann later learned the man with the stick was Defendant Price.

3.10   Plainitff Crann had no memory of seeing Defendant Price before.

3.11    Defendant Price spoke a few unintelligible words to Plaintiff
        Crann.

3.12    Defendant Price spoke with an odd slurred speech pattern,
        he seemed to have been drinking.

3.13    Plaintiff Crann noticed that Defendant Price had a cell
        phone and was seakig unitelligibly into it.

3.14    Concerned about the odd man and his behavior, Plaintiff
        Crann walked to Plaintiff Black's truck, which had not yet
        been unpacked from his trip.  The truck was parked at 3922
        Whitman Avenue, a few doors North of Plaintiffs' home.

3.15    North of Plaintiffs' home and truck was the Casabel Motel
        located with its entrance at 3938 Whitman Avenue, at the
        corner of 39th Avenue.  The bulk of this building is located
        on 39th Avenue.  Behind it is a large parking area that
        extends across much of Whitman Avenue.

3.16    Plaintiff Crann quickly tested the back of the truck and felt
        that it was still locked.

3.17    After glancing inside his vehicle, Plaintiff Crann noticed a
        police car had pulled up to the front of the Casabel Motel.
        Its lights were flashing.

3.18    Curious as to what was going on, Plaintiff Crann began to
        walk toward the police car.

3.19    Defendant Price, who Plaintiff knew only as the odd man
        with the stick, was now in front of the Casabel Motel.

3.20 Defendant Price was not a resident of the neighborhood. Plaintiff Crann who'd lived on this block nearly three years had no memory of ever seeing him before.

3.21 Defendant Price pointed at Plaintiff Crann and yelled at the police, "that's him in the red jacket."

3.22 At that moment two Defendant Officers came charging out of the police car with their hands on their guns.

3.23 Plaintiff Crann had no weapons on him.

3.24 Plaintiff Crann had his hands out and in plain view. His hands remained in plain view through this entire incident. Nor did he offer any resistance throughout the entire incident.

3.25 A second police car pulled behind Plaintiff Crann, it's lights flashing.

3.26 One of the Officers present at this point was L. Carver.

3.27 One of the Officers present was J. Maccarrone

3.28 The two officers in front of Plaintiff Crann had their guns drawn, pointed at him and were yelling "Freeze."

3.29 Plaintiff Crann complied. He froze.

3.30 One or more Defendant Officers then pounced on Plaintiff Crann.

3.31 In no way did Plainitff Crann resist.

3.32 Defendant(s) brutally smashed Plaintiff Crann's head into the pavement, causing injury.

3.33    Defendant(s) twisted Plaintiff Crann's arm and shoulder behind him, almost tearing it out of its joint, causing further injury.

3.34    Plaintiffs hands were forced into handcuffs.

3.35    With Plaintiff Crann's hands already behind his back and in handcuffs, and his offering no resistance, Defendant(s) drove their knee(s) into Plaintiff Crann's back.

3.36    Plaintiff Crann still offered no physical resistance. He called for his housemate John Perry.

3.37    A neighbor, also named John, came out of his building. This neighbor was ordered inside by the Defendant Officers.

3.38    Plaintiff Crann was in great pain at this point. The handcuffs were tight and cut into his wrists, hurting him. His head ached. His cheek was cut open. His eye glasses were broken.

3.39    After further abuse by Defendant Officers, Plaintiff Crann learned that Defendant Price had told the police he (Crann) had broken into his (Price's) car two weeks ago.

3.40    Plaintiff Crann tried to tell the police he'd been out of town during this time. He told them he hadn't set foot in Seattle in the last six weeks. Defendants refused to listen to this, much less do anything to check on its veracity.

3.41    Plaintiff Crann tried to tell the Defendant Officers his

COMPLAINT                                                          10
CRANN V. CARVER, ET AL

housemate would confirm this.  Defendants made no effort
to verify this.

3.42   Defendant Officers made no effort to recontact the neighbor
they'd ordered inside to see if he might verify what Plainitff
Crann said.

3.43   Defendant Officers made no other effort to confirm that
Plainitff had been out of the area.

3.44   In the course of a subsequent filing of criminal charges
against Plainitiff and subsequent investigation surrounding
these charges no evidence of a police report filed by
Defendant Price concerning the alleged earlier incident ever
emerged.

3.45   Subsequent to this incident Plaintiffs made additional
attempts to locate a police report documenting this earlier
alleged incident.  The Records Department of the city of
Seatle Police Department confirmed that no such records
existed.

3.46   Defendant Officers gratuitously abused Plainitff Crann.  For
example, when Plaintiff explained that he was a teacher,
Defendants derided him, telling him he was stupid and that
they'd never have a kid of theirs in his classroom.

3.47   Though Plaintiff Crann was now accused of burglarinzing
cars, it was the Defendant Officers who now rifled through
Plaiitff Black's truck.

COMPLAINT                                                        11
CRANN V. CARVER, ET AL

3.48    The Defendant Officers pulled out the vehicle registration.

3.49    Reading from this registration, the Defendant Officers then
        demanded that Plaintiff Crann spell the name of his fiancee
        who owned the truck.

3.50    When Plaintiff Crann got nervous the Defendant Officers
        then berated him, saying he couldn't spell.

3.51    The vehicle registration was never returned to the car and
        Plainitff Black was forced to replace it.

3.52    Defendant Officers rummaged through Plainitff's wallet and
        produced a New Mexico Drivers License. When Plaintiff
        Crann explainied he resided in New Mexico part of the year,
        Defendant Carver merely abused Plainitff further, mocking
        Plaintiff for this.  "You're not in New Mexico now," said
        Defendant Carver.

3.53    Defendant Carver jerked Plaintiff Crann roughly to his feet,
        then shoved Plainitff Crann into the police car.

3.54    Defendant Carver did not formally question Plaintiff, but
        instead abused Plaintiff, barking at him in the manner of a
        Drill Sergeant.

3.55    Defendant Carver repeatedly berated Plaintiff for not
        stopping, when in fact he had frozen when ordered.

3.56    At no point was Plaintiff read his rights by any of the
        Defendants.

3.57    Defendant Carver's abuse of Plaintiff continued for several

COMPLAINT
CRANN V. CARVER, ET AL

hours, and continued into the time he was placed in a
holding cell.

3.58  At the holding cell, Plaintiff Crann asked Defendant Carver
if he could make a phone call.  Carver told him, "You are
my prisoner.  You have no rights."

3.59  Plaintiff Crann already suffered from social anxiety disorder.
The conditions of his treatment and in particular his
treatment by Defendants made this worse.

3.60  The Defendants told Plaintiff Crann he couldn't be released
because he had no Identification on him.  (He had.  They'd
taken it.)

3.61  One of the prisoners began screaming like a Banshee,
kicking and screaming at the jail cell.

3.62  Plainitff Crann felt his nerves shatter.  It was a feeling of
utter helplessness.  He'd never broken a law in his life.
Now he was arrested, beaten, threatened with lethal force,
cut off from all contact merely for setting foot outside his
house.

3.63  Defendants kept Plaintiff Crann in this cell for four hours.

3.64  During no part of this was Plaintiff Crann offered any
treatment for his physical injuries, or his social anxiety
disorder.

3.65  Finally, Plaintff Crann was moved to the King County
Detention Center.  It was not until approximately 11 PM that

he was allowed to make a collect phone call.

3.66    Plaintiff Crann spent the rest of the night in custody.
        During this time his condition worsened.

3.67    Plainitff Crann was interviewed by psychiatric nurse while in
        jail.   At the time of this interview he was now thoroughly
        distrusting of any help offered him by the authorities.

3.68    When Plaintiff Crann was finally released fourteen hours
        after being taken into custody he was not only physically
        injured, but thoroughly traumatized.

3.69    The following day, October 6 2003, Plaintiff John Crann's
        fiancee, Plaintiff Laurel Black, callled the police station to
        complain about Defendant Officers' conduct.  She was
        aghast that Plainitff Crann had been completely peaceful,
        but was met with so much violence, and abuse.

3.70    Plaintiff Black spoke to Defendant  Sergeant Benson during
        this call.

3.71    Defendant Sergeant Benson said that he would get a copy
        of the report, and call her back in a few hours.

3.72    Approximately a half hour later, Plaintiff Black received a
        call back.  The caller was arguementative and abusive.
        Plaintiff Black began repeating what she had told Sergeant
        Benson.  The caller interrupted and said that he was one of
        the arresting officers, Defendant Carver.

3.73    Plaintiff Black was so shocked she almost dropped the

COMPLAINT                                                    14
CRANN V. CARVER, ET AL

phone. Her housemate John Perry continued the
conversation with Defendant Carver.

3.74    Defendant Carver then threatened that Plaintiff Crann
would now be charged with a felony because they had
issued a complaint.

3.75    Defendant Carver's threat was also heard by the Plantiffs.

3.76    John Perry repeated Defendant Carver's threat to confirm it.

3.77    Both Plaintiffs Crann and Black heard this.

3.78    Defendant Carver's statement multiplied the anxiety the
Plaintiffs were feeling. This wasn't just a single bad
incident. First they'd been victimized by police misconduct.
When they called the supervisor, the very officer they'd
complained about had called them back and threatened
them with more criminal charges. Who do you turn to if the
police abuse you, and when you complain you receive a
threatening call from the abusing officer?

3.79    About an hour after the call from Defendant Carver,
Sergeant Benson called back. The Plainitff s were too
shocked to pick up the phone. Sergeant Benson left a
message. In no part of his message did Sergeant Benson
mention the call by Defendant Carver.

3.80    Crann's social anxiety disorder worsened to a level it had
never approached before. He was unable to leave the
house for weeks. Passing police cars would send him into

panic. He was unable to attend social events. He was
unable to go to his job.

3.81    The machinery of the criminal jusitice system exacerbated
        Plaintiff Crann's anxiety and suffering.

3.82    Plaintiff Crann was first arraigned not on the charge of
        "vehicle prowl," but oddly, on the charge of "obstructing."
        That arraignment was cancelled.

3.83    A week later, Plaintiff Crann was summoned to court for an
        intake hearing. He arrived. He waited for many hours. He
        finally learned the hearing was cancelled. He was told the
        matter was being investigated further.

3.84    There was no evidence that this investigation looked at
        anything offered as corroboration by Plainitiff Crann. No
        evidence exists or has been revealed indicating contact
        was made with any witnesses who would confirm Plainitff
        Crann's absence during the alleged prior crime. No
        evidence exists or has been revealed indicating attempts
        were made to corrobarate  anything which would confirm
        Plainitff Crann's absence during the alleged prior crime.

3.85    Plaintiff John Crann didn't have a lot of money as a special
        education teacher and lawyers are expensive. He and his
        fiancee Plaintiff Black borrowed over $5,000 from friends
        and family to pay for a lawyer to do the investigation the
        City couldn't find the time or resurces to do.

3.86   Neither the investigation of the City or of Plaintiffs' Criminal Attorney determined any remote foundation for the incident. There was for example, never a prior police report produced to justify Defendant Price's accusation of Plainitff Crann, much less any basis for the charges.

3.87   In addition communication with the Prosecutor revealed, the charges changed to suspicion of prowling two weeks ago to suspicion of prowling six weeks ago.

3.88   The charges were dismissed with prejudice.

3.89   Plaintiffs filed a complaint with the Defendant Office of Professional Accountability (OPA), the agency charged with oversight of the Seattle Police.

3.90   The complaint was not looked at between January 2005 and May 2005 because in the words of OPA's Director Sam Pailca, "Your letter and the large envelope it was mailed in were fastened to the top of the underlying file, and this change in the appearance of the file caused it to be placed by me apart from the rest of the OPA files pending review." If OPA cases are not resolved within six months, most actions against the officer are rendered moot.

3.91   OPA Captain Neil Low sent a letter to Plaintiffs on May 13, 2005, letting them know the case was "officially closed."  No mention was made in Low's letter or any documents concerning the menacing call of Defendant Carver to

COMPLAINT                                                          17
CRANN V. CARVER, ET AL

Plainitffs' home, and threats of additional charges from
Defendant Carver simply because they'd complained about
his conduct.

3.92    Both Plaintiffs suffered tremendously as a result of
Defendants' conduct.

3.93    Plaintiff Crann was seen by a doctor at Greenwood Medical
Center, the day after his arrest.  He was diagnosed with
Post Traumatic Stress Disorder.  His Blood Pressure had
gone up.  He was prescribed multiple medications to deal
with this stress.

3.94    Plaintiff Crann suffered from loss of sleep, finding it
impossible to get more than a few hours of sleep a night.
This has diminished somewhat, but continues to present.

3.95    Plainitff Crann had reoccuring nightmares of police holding
guns on him.  These have diminshed in their requency, but
persist to present.

3.96    The medications Plaintiff Crann took had side effects.
These gave Plainitff headaches.  They upset his stomach.
They killed his sex drive.

3.97    Plaintiff Crann continued treatments with this physican, and
received treatment from other physicians.  These
treatments included counseling and acupuncture.

3.98    After much persuausion, on May of 2004, Plaintiff Crann
began a course of treatment at Harborview's Center for

COMPLAINT                                                                                    18
CRANN V. CARVER, ET AL

Sexual Assault and Traumatic Stress (HCSATS).

3.99    HCSATS notes Plaintiff Crann has developed Post Traumatic Stress Disorder and has symptoms which include the following: flashbacks and intrusive memories, nightmares, reliving the event, physical reaction when reminded of the event, avoidance of triggers, heightened anxiety, feeling numb and detached from others, poor concentration, hyper-startle and hyper vigilance, anxiey when going out at night and increased anxiety when people surround him.

3.100    Plainitff Crann continued to have weekly treatments at HCSATS through June of 2005. The treatments were discontinued because of issues of discontinued funding.

3.101    Though many of the worst symptoms have diminshed, Plaintiff Crann continues to manifest symptoms which are a direct result of Defendants' actions. He startles easliy and is nervous. The intrusive memoires are less frequent, but they persist.

3.102    Plaintiff Crann has been advised he should continue with this therapy, but lacks the funds to do so.

3.103    Plaintiff Laurel Black, Crann's fiancee, also lost sleep and work as a direct and proximate cause of Defendants' actions. Her health also deteriorated. She lost color in her face. She has been unable to afford counseling to deal with

COMPLAINT
CRANN V. CARVER, ET AL

this.

## IV. STATEMENT OF DAMAGES

4.1 As a direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiffs sustained severe physical and mental pain and suffering and injury in an amount that will be established at trial.

4.2 As a further direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiffs have been required to seek medical treatment and care, and will be required to seek future medical treatment and care, the exact amount of the expense for medical treatment and care will be established at the time of trial.

4.3 As a further direct and proximate result of the intentional and negligent acts of the Defendants, Plaintiff Crann spent  a day in jail, provoking extreme manifestations of his social anxiety disorder, creating post traumatic stress, disrupting his life and causing significant damages as above and as will be proved in trial.

4.4  Plaintiffs are entitled to compensation for the Constitutional harms Defendants inflicted on them including loss of liberty, and arbitrary and extreme exercise of force against Plainitiff Crann.

4.5  As a result of Defendants' intentional and/or negligent conduct, Plaintiff was forced to defend himself against an improper criminal action and to retain counsel to vindicate him in that case, for which he is entitled to be reimbursed.

COMPLAINT                                                                    20
CRANN V. CARVER, ET AL

## V. CAUSE OF ACTIONS:

### COUNT ONE
### VIOLATION OF CIVIL RIGHTS
### (TITLE 42 U.S.C. SECTION 1983)
### (As To All Individual Defendants)

5.1.   Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 4.5 of this complaint.

5.2.   In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff as alleged herein, of certain constitutionally protected rights including, but not limited to:

(a)  The right not to be deprived of liberty without due process of law;

(b) The right to be free from invasion or interference with Plaintiff zone of privacy;

(c) The right to freedom of speech;

(c)  The right to equal protection of the law;

(d) The right to be free from police use of excessive force;

(e) The right to be free from discriminatory law enforcement; and

(f) The right to be free from unreasonable search and seizure.


5.3  In violating Plaintiff's rights as delineated above, and other rights according to proof, Defendants acted by direct arrest and/or use of force, or by ratifying personally that arrest and uses of force, Defendants acted to violate Plaintiffs' rights under the First, Fourth, Fifth, Eighth, and 14th Amendments to the U.S. Constitution.

COMPLAINT                                                                              21
CRANN V. CARVER, ET AL

5.4   By acting to retaliate against Plaintiffs, including threatening phone calls to their home and threats of additional charges, for their exercise of their First Amendment Right to object to the unjustified stop of Plaintiff, Defendants further violated those rights.

5.5   As a direct and proximate result of the violation of his Constitutional rights by Defendants, and each of them, Plaintiffs suffered general and special damages as alleged in this complaint.

5.6   The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

(Paragraph 5.7 is omitted)

## COUNT TWO
### Violation of Civil Rights
### (Title 42 U.S.C. Section 1983)
### (As To Defendants DOES)

5.8   Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5.7 of this complaint.

5.9   At all times herein mentioned, Defendants Does acted in their official capacities as supervisors of Defendants Carver and Maccarrone, failed to properly supervise, train, and discipline Defendants Carver and Maccarrone, and acted specifically to ratify these Defendants' drastically inappropriate conduct and intentional acts to deprive Plaintiff of his rights secured by the Constitution of the United States, including, but not limited to their rights under the First, Fourth, Fifth, Eighth, and 14th Amendments to the U.S. Constitution.

5.10   In committing the acts complained of herein and in their official and

COMPLAINT                                                                      22
CRANN V. CARVER, ET AL

individual capacities, Defendants acted with a design and intention to deprive Plaintiffs of their rights secured by the Constitution of the United States and acted with deliberate indifference to Plaintiffs' rights.

5.11  As a direct and proximate result of the acts complained of herein, Plaintiffs have suffered general and special damages as set forth in this complaint.

5.12  The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth

## COUNT THREE
### - omitted-

**Paragraphs 5.13-5.16 are omitted**

## COUNT FOUR
### FALSE ARREST
### (As to All Defendants)

5.17  Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5.16 of this complaint.

5.18  Defendants' seizure and arrests of Plaintiff Crann without probable cause or a warrant violated Plaintiff's rights under Article 1 of the Washington State Constitution, Section 7. 4.4, and further resulted in the malicious prosecution which followed, and the harm caused thereby.

5.19  The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts herein alleged.

COMPLAINT
CRANN V. CARVER, ET AL

23

5.20.  As a direct and proximate result of the acts complained of herein,

Plaintiff has suffered general and special damages as set forth in this complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


### COUNT FIVE
### FALSE IMPRISONMENT
### (As to all Defendants)

5.21.  Plaintiff realleges and incorporates herein by reference the

allegations set forth in Paragraphs 1 through 5.20 of this complaint.

5.22   As a result of the false arrests detailed above, Plaintiff Crann was

violently arrested and held for fourteen hours.

5.23   Plaintiff was unjustly deprived of liberty for that period and

subjected to abuses therein.

5.24  As a further direct and proximate result of the false arrest and

imprisonment of Plaintiff, he suffered damages and injuries as heretofore alleged

in this complaint, including Post Traumatic Stress Disorder,

5.25   The conduct of Defendants was willful, malicious, oppressive and/or

reckless, and was of such a nature that punitive damages should be imposed in

an amount commensurate with the wrongful acts herein alleged.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


### COUNT SIX
### ASSAULT AND BATTERY
### (As to All Defendants)

5.26   Plaintiff realleges and incorporates herein by reference the

allegations set forth in Paragraphs 1 through 5.25 of this complaint.

COMPLAINT                                                              24
CRANN V. CARVER, ET AL

5.27   Defendants' beating of Plaintiff Crann including menacing him with their guns, tackling him, slamming his face into the pavement, working his arm against the joint, and  continuing to kick and strike Plainitff after he was hand cuffed, and continuing to menace Plaintiff with their guns after he had been hand cuffed and subdued and when he offered no physical resistance, was done intentionally, without consent or lawful authority, or legitimate police purpose, and therefore constituted common law battery.

5.28   All of the above alleged tortious conduct caused Plaintiff to experience severe physical harm and reasonably fear additional imminent harm to his health and safety, additional tortious use of force, and in fact, to very reasonably fear for his life.  This fear constitutes a common law assault.

5.29  Defendants knew or reasonably should have known that they were and would inflict this reasonable fear by Plaintiff.

5.30   As a direct and proximate result of the violation of his rights by Defendants, and of Defendants' tortious conduct towards Plaintiff, Plaintiff suffered general and special damages as alleged in this complaint.

5.31   The detention, arrest and the resulting abuse of Plaintiff was directly and proximately caused by Defendants' training, supervision and failure to discipline and the conduct to which Plaintiff was subjected.

5.32   The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## OMITTED

Counts 5.33-5.39 are omitted.

## COUNT SEVEN
## OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As to All Defendants)

5.40  Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5.40 of this complaint.

5.41  In carrying out the beating, detention, arrest, further abuse, and other acts alleged throughout this complaint, Defendants, and each of them sought to cause emotional distress and trauma to Plaintiff, and Plaintiff did suffer such emotional distress with accompanying physical symptoms.

5.42  As a direct and proximate result of the violation of his constitutional rights by Defendants and their other tortious conduct against them, Plaintiff suffered general and special damages as alleged in this complaint.

5.43   The conduct of Defendants was willful, malicious, oppressive, extreme and outrageous and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT EIGHT
## Malicious Prosecution
(As to all Defendants )

5.44   Plaintiff reallegess and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5.44 of this complaint.

COMPLAINT                                                                      26
CRANN V. CARVER, ET AL

5.45. Defendant's arrest and citation of Plaintiff was in retaliation for the exercise of Plaintiff's rights under the Washington State Constitution and these actions constitute malicious and retaliatory prosecution, a violation of the Revised Code of Washington Title 9, Chapter 62, Section 10(1). The prosecutions, which were eventually dismissed with prejudice, were a direct result of the false arrest of Plaintiff

5.46   As a direct and proximate result of the violation of his Constitutional rights by Defendants and Defendants other tortious conduct, Plaintiffs Crann and Black suffered general and special damages as alleged in this complaint and had to expend personal resources to hire counsel to vindicate Plaintiff Crann. This prosecution also further exacerbated the emotional distress, anxiety, fear, loss of sleep and other physical harm to Plaintiff and further disrupted his life.

5.47   The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein. WHEREFORE, Plaintiff prays for relief as hereinafter set forth

## COUNT NINE
## NEGLIGENCE
### (As to All Defendants)

5.48   Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5.47 of this complaint.

5.49   Defendants, and each of them, owed Plaintiff a duty to use due care at or about the times of the aforementioned incidents.

5.50   In committing the aforementioned acts and/or omissions,

COMPLAINT                                                                 27
CRANN V. CARVER, ET AL

Defendants, and each of them, negligently breached said duty to use due care, directly and proximately resulting in the injuries and damages to the Plaintiff as alleged herein.

5.51   Said acts and/or omissions include but are not limited to failing to adequately investigate this matter before subjecting Plaintiff Crann to unneccessary force and suffering prior to arrest.

5.52 Said acts and/or omissions include but are not limited to failing to adequately investigate this matter before subjecting  Plaintiff Crann to unneccessary force and suffering once handcuffed and indisputably under control.

5.53 Said acts and/or omissions include but are not limited to failing to adequately investigate this matter before subjecting  Plaintiff Crann to uneccessary prosecution when simple investigation could have determined these charges were without merit.

5.54 Said acts and/or omissions include but are not limited to allowing Defendant Carver who was the subject of complaint to return a phone call concerning that complaint and threatening the Plaintiffs for making that complaint.

5.55 Said acts and/or omissions include but are not limited to failing to adequately investigate said phone call in the course of the investigation by the Office of Professional Accountability.

5.56 Said acts and/or omissions include but are not limited to failing to adequately investigate the discrepency between times claimed for the alleged prior bad act in the course of the investigation by the Office of Professional

Accountability.

5.57 Said acts and/or omissions include but are not limited to failing to
the Office of Professional Accountability failing delaying the invesitigation many
months because of the palcement of a paperclip.

5.58 Said acts and/or omissions include but are not limited to failing to
adequately supervise so as acts and omissions were allowed to occur.


WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


### COUNT TEN

**Omitted**

### COUNT ELEVEN
**MUNICIPAL LIABILITY OF THE CITY OF SEATTLE**

5.59    Plaintiff realleges and incorporates herein by reference the
allegations set forth in paragraphs 1 through 5.58 of this complaint.

5.60    At all times material to this complaint, defendant City of Seattle by
and through its police department as well as supervisory police personnel and
police officials had in effect certain explicit and de facto policies, practices and
customs which were to be applied to the polices of the Defendant Officers.

5.61    These policies proximately led to the beating, false arrest, and
false prosecution, as well as the subsequent intimidation by Defendant Carver, in
violation of the rights of Plaintiffs as set forth hereinabove, including the Fourth
and Fourteenth Amendments.

## PUNITIVE DAMAGES ALLEGATION

5.62 Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5.61 of this complaint.

5.63 The acts and omissions of Defendants referenced above were motivated by evil intent or motive, or involved reckless or callous indifference to Plaintiffs' rights including those of due Process under the Fourteenth Amendment.

## VI. JURY TRIAL DEMAND

6.0  Plaintiff hereby demands a jury trial in this matter.

## VII. PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

7.1        For general damages including pain and suffering together with special damages for Plaintiff's reasonable and necessary legal expenses and medical expenses including hospital, doctor, and related treatment both past and future, the exact amount of which will be established at the time of trial;

7.2        For punitive damages in an amount to be proven at trial pursuant to Federal and State law;

7.3        For actual attorney's fees and litigation costs pursuant to 42 U.S.C. 1988;

7.4        For statutory attorneys fees and costs; and

7.5        For court supervised traffic stop and detention policies

COMPLAINT                                                                    30
CRANN V. CARVER, ET AL

7.6     For such other and further relief as the Court deems just

and proper.

DATED : September 6, 2005

_____

PAUL RICHMOND
Attorney for Plaintiff

PAUL RICHMOND
(WSBA #32306)
4616 25th Avenue NE,
#449
Seattle, WA, 98105
(206) 526-0565

COMPLAINT                                                                                           31
CRANN V. CARVER, ET AL

**EXHIBITS IN SUPPORT OF COMPLAINT**

**RE: FILING OF CLAIM WITH CITY OF SEATTLE**

**City of Seattle**
# CLAIM FOR DAMAGES

**NOTE:**
Type or Print Legibly.
See instructions on back.

**CITY USE ONLY**
CLAIM NUMBER
DATE FILED

| **CLAIMANT** | NAME (FIRST - M. - LAST OR BUSINESS NAME) John Crann | HOME PHONE 206-633-3394 |
|---|---|---|

HOME ADDRESS (NUMBER - STREET - CITY - STATE - ZIP) 5960 Whitman Ave N. Seattle WA 98107    BUS. PHONE

**ACCIDENT/LOSS**   DATE Oct. 5 2003   TIME Approx 7 PM

**LOCATION/SITE** BE VERY SPECIFIC: STREETS, ADDRESSES, etc.
Approx 40th and Whitman.

**DIAGRAM**
Use if this will help you locate or describe what happened

**WHAT HAPPENED** DESCRIBE IN YOUR OWN WORDS HOW THIS LOSS OCCURRED AND WHY YOU BELIEVE THE CITY IS RESPONSIBLE.
I was falsely arrested and subjected to unnecessary force by Seattle Police

CITY DEPT?
CITY EMPLOYEE(S)?
CITY
VEHICLE NUMBER, LIC., etc.

**WAS YOUR PROPERTY** (home, auto, personal property) **DAMAGED?**
☐ YES   IF SO, THEN FULLY DESCRIBE - SUCH AS AGE, MAKE MODEL, CONDITION, VALUE, OR EXTENT OF DAMAGE.
☐ NO

**WERE YOU INJURED?** ☑ YES IF YES, THEN COMPLETE THE FOLLOWING: ☐ NO
DESCRIBE YOUR INJURY (IDENTIFY YOUR DOCTORS) Greenwood Medical, Harborview, & Larry Kaplan - (physical) See reports from Greenwood Medical, Dr Larry Kaplan and for PTSD treatments see Harborview

DATE OF BIRTH 5-8-58   WAGE LOSS ☑ YES ☐ NO  IF YES, THEN RATE OF PAY $12.49 hr
KIND OF WORK Para-educator   EMPLOYER Highline Public Schools

**AMOUNT CLAIMED** IF UNKNOWN, THEN ENTER "UNKNOWN"   $ Unknown

**SIGNATURE OF CLAIMANT** (AND TITLE, IF A BUSINESS) I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.
EXECUTED this ___ day of June 20 05.
at Seattle, King County, Washington.
John P. Crann

CS 18.10 REV. 12/2002

**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ 3 7 |
| Certified Fee | 2.30 |
| Return Reclpt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 2 6 7 |

Postmark
Here

6-20-05

Sent To  PO Box 9 4728

Street, Apt. No.; or PO Box No.  TW Gulab

City, State, ZIP+4  Seattle WA 98124-4728

PS Form 3800, June 2002          See Reverse for Instructions

---

## ACKNOWLEDGEMENT

Claim #: ___C 75339_____ _____

Adjuster Assigned: <u>Campbell-Husted Co.</u>_____

Phone No: <u>(206) 533-1260</u>

YOUR CLIENT JOHN CRANN

Claims on average take 4-6 weeks for handling.
More complicated cases may take longer.